May it please the Court, Jim Wilson on behalf of Juan Saavedra-Martinez. Mr. Saavedra-Martinez's Fifth Amendment rights were violated when he was subjected to custodial interrogation without the benefit of having been provided with his Miranda rights. Any reasonable person in Mr. Saavedra-Martinez's position would have felt that he was not free to terminate questioning and leave based upon the totality of the circumstances of the case. The pertinent facts related to whether Mr. Saavedra-Martinez was in custody are these. The time is midnight. The location is about a mile and a half east of the Colorado River in the western portion of Yuma County. The Colorado River in that area forms the border between the United States and Mexico. Border Patrol Agent Clifford Binder is on routine patrol. He gets a radio broadcast from an infrared camera operator that the camera operator has just observed an individual who turns out to be my client emerging from the brush line along the Colorado River. The camera operator guides Agent Binder to the exact location where Mr. Saavedra-Martinez is encountered. When Agent Binder comes upon Mr. Saavedra-Martinez, he's lying face down in an irrigation ditch attempting to conceal himself. Agent Binder and Mr. Saavedra-Martinez are alone. This area is a common area for the crossing of illegal aliens into the United States from Mexico. Based upon those, once Agent Binder comes across my client lying face down in a ditch, he immediately proceeds to ask him some questions. One of the questions that he asks him is what is his nationality. My client responds that he's from Mexico, that he's Mexican. Another question that Agent Binder asks my client is whether he has any immigration papers or any lawful right to be in the United States. My client answers in the negative. Miranda warnings were not provided before those questions were asked. Those questions were reasonably likely to elicit an incriminating response, and, in fact, both of them did. My client is then handcuffed. He's taken down to the Border Patrol station, processed, and eventually charged with felony illegal reentry after deportation. The cases in this area and the ones that we've relied upon in our briefs, in addition to Miranda, the Berkmer v. McCarty is the key United States Supreme Court case that sets forth the analytical framework that the Ninth Circuit cases have employed in these border Miranda cases. And the Ninth Circuit cases that I relied upon primarily in my brief are the Peron-Panez case and the Galindo-Callegos case. The former case supports my position. The other case goes contrary. Berkmer, of course, was a traffic stop situation. In Berkmer, the Supreme Court held that when a motorist is stopped and questioned briefly by the side of the road, that Miranda warnings are not required under those circumstances. Of course, the core concept that the Court recognized in Miranda is that a custodial interrogation setting is inherently coercive, and the Miranda warnings were designed to mitigate or reduce the inherently coercive atmosphere of custodial interrogation. The Berkmer opinion in reaching the conclusion that Miranda warnings were not required in the traffic stop circumstance, there basically were two rationales behind that holding. The first was the brief nature of a traffic stop, in that the expectation of the typical motorist is that he or she is going to be stopped briefly, they're going to be questioned, and then in the vast majority of cases they're going to be free to go on their way. The second rationale behind Berkmer, and the rationale that I think really goes to the heart of my client's position in this case, is the public nature of the typical traffic stop. The Court reasoned in Berkmer that the possibility of police misconduct during interrogation beside a road, by the roadside, was reduced because there are passersby in the area who are going to have a mitigating effect on any potential psychological or physical coercion or abuse which might be employed. There are also other motorists on the road, which again would reduce the possibility of police misconduct because there are eyewitnesses. And in the Baran-Panes case and also in the Galindo-Gallegos case, not only do both of those opinions rely upon the analytical framework of Berkmer v. McCarty, but they also both focus specifically on the second rationale behind the Court's decision in Berkmer. In other words, whether this was a public stop or a private stop, and of course by private I don't mean there was no state action, but that there were no other actors present. Or in the case of Baran-Panes, here's an individual who's herding cattle in a remote part of the Idaho Range. There are two officers who then interview him about an arson that has occurred in the area. And the interrogation takes place between, it's unclear, between a half an hour or an hour and a half. Mr. Baran-Panes is not handcuffed. He is accused of being a liar. He is threatened with possible deportation and separation from his family. And he's separated from a co-worker, individual Mike Ruffing, who comes within 60 feet of where the interrogation is taking place and then is told by the officers to back off. In that case, of course, the Court held that Mr. Baran-Panes was in custody for purposes of Miranda and that the Miranda warnings were required. What do you say about the Yarborough case? I'm sorry, which case? Yarborough, the United States Supreme Court. Alvarado? Yes. Yarborough v. Alvarado? Yes. Well, of course, that's a case from the most recent term. Really, I think that's the most recent word from there. Correct. And the Yarborough v. Alvarado really sort of just reinforced the analytical framework, which is to be employed in this case. Well, you can say it reinforced it, but it was not exactly in the open. It was in the police station for two hours. And the person was a juvenile. That's true. Yeah, and the parents weren't allowed in. That sounds pretty custodial to me, but it didn't seem that way to the Supreme Court. It didn't seem that way. But the standard of review in that case, I think, was a different standard of review because it was a habeas case. Also, it wasn't a de novo review. Is that how you're going to distinguish it? Well, no. I think that it can be distinguished from the facts of this case. My client, when Agent Binder came across him, was lying face down in a ditch at midnight in an area commonly used by illegal aliens to enter the country. It's not a situation such as in Yarborough v. Alvarado where the individual voluntarily, quote, unquote, came down to the police station with his parents and was told that he would be free to leave after a period of time. So I think the time of night when my client was apprehended is distinguishable from Yarborough. I think the location where he was encountered can be distinguished from Yarborough. And I think the fact that my client's lying prone on the ground in front of an armed, uniformed officer, I think, can be distinguished. I think, and probably most important to this case, Your Honor, I think that, at least in Yarborough, if you look at what I think is the important issue in the case, whether the interrogation was public or private, sure, the young fellow in Yarborough was being interrogated by officers and his parents weren't actually in the room, but they were present at the police station. And I think the fact that they were present could have had a mitigating effect had the police been inclined to resort to any sort of misconduct, either psychological coercion or physical abuse, whereas in my client's case, no one else was present. And I think that's the key issue. And I'd like to reserve a little bit of time for rebuttal. Thank you. Roberts. Thank you, counsel. Fair from the government. Good morning, Your Honors. May it please the Court. I'm Emory Hurley representing the District of Arizona on behalf of the United States. Your Honors, the defendant in this case was not under formal arrest, nor was he subject to circumstances associated with formal arrest. His restraint of freedom was not to the level of a formal arrest, and that is the test. That being the case, Miranda does not apply to his circumstances. Although he was in a rural area, he was in an agricultural area. It was not quite a completely unimproved area, but certainly was the boonies. He was near County Road 8 1⁄2 and Avenue G. He was within sight, apparently, of the cameras, which in this case were on a desalinization plant. And when the agent approached him, the agent suspected that he was an alien illegally in the United States, and he made a limited, narrowly focused inquiry to confirm or dispel his suspicions. It was the most reasonable course of action that the agent could possibly have taken. The only other course of action that the agent could have would be to come across somebody in this area, and rather than ask them questions, are you a citizen of the United States? Do you have permission to be in the United States? The only other option for that agent at that point, knowing what this agent knew, that this defendant had been seen emerging from the brush line of the Colorado River where it forms the border, he ultimately finds him hunkered down in the bottom of this drainage ditch, what other possible course of action does he have if he can't ask a few questions to confirm or dispel his suspicions, and that would be to take the person in and run them, take them to the station and figure out what their identity is. This is exactly what Terry contemplates. This is exactly what Brignani-Ponce contemplates, and then Galindo-Galegos. And frankly, the actions of this agent are textbook actions to conform to a Terry style. The circumstances under which he was questioned are a far cry from those of Baron-Panez, where the defendant was questioned for an extended period of time, standing in front of the vehicle of one of the agents. A sheriff's deputy and a federal agent question him for between half an hour and an hour and a half. They confront him with evidence of his guilt. They infer that there will be immigration ramifications if he doesn't answer their questions. And when his co-worker starts to approach on horseback, his co-worker is intercepted 60 feet or so from the scene where they're interrogating him, and the co-worker is told to go, is told to leave. The co-worker then leaves and goes about his business. It is that sort of affirmative isolation that created a police-dominated environment for Baron-Panez. In this case, the questioning is brief, the questioning is without handcuffs, the questioning is one agent and the one suspect. The questions are only focused on the bare minimum issue, is this person lawfully in the United States? Once the agent finds out that this person is not from the United States and does not have permission to be in the United States, he's then taken to the Border Patrol Station. At that point, he is in custody, and at the Border Patrol Station, he has read his Miranda warnings. But prior to his formal arrest, prior to being taken into custody and transported to the station, he was not either under arrest or was he suffering circumstances a restraint of freedom to the extent that would be associated with formal arrest and require Miranda warnings. Thank you, counsel. I just wanted to respond briefly. I think that the facts of Baron-Panez are somewhat more analogous to Yarbrough v. Alvarado than our case, and, of course, in Baron-Panez, the court held that that defendant was in custody. Specifically, I think the presence of this coworker, Mike Ruffing, although that was separation from him, was held to be a coercive factor. I think the fact that Mike Ruffing was present is analogous to the defendant in Yarbrough v. Alvarado's parents being present and nearby. Even though neither were allowed to be exactly in the area where the questioning was taking place, law enforcement knew that others were there. And I think the presence, even though it wasn't an immediate presence in either case, the presence of other individuals mitigated any sort of coercive influence which might have, which the police officers might have been inclined to employ. In other words, the facts of Baron-Panez and the facts of Yarbrough v. Alvarado point to more of a public situation than what Mr. Saavedra-Martinez had in the present case was just himself, an agent, Binder, with nobody else present. And I think the fact that it was a completely isolated private stop, which I think goes to the second rationale behind the Berkemer v. McCarty decision, we would respectfully ask the Court to reverse. Thank you. Thank you, counsel. The case just heard will be submitted. Next case on the oral argument calendar is United States v. Bowman.
judges: B. Fletcher, Noonan, Thomas